

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BRENDA K. SANDERS,

           Plaintiff,

vs.

Case:2:16-cv-12959
Judge: Cohn, Avern
MJ: Whalen, R. Steven
Filed: 08-15-2016 At 10:18 AM
CMP BRENDA K. SANDERS V MICHIGAN SU
PREME COURT, ET AL (LG)

MICHIGAN SUPREME COURT, MICHIGAN JUDICIAL TENURE
COMMISSION, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
U.S. ATTORNEY'S OFFICE, DR. NORMAN L. MILLER, UNITED STATES
GOVERNMENT, MICHIGAN ATTORNEY GRIEVANCE COMMISSION,
MICHIGAN ATTORNEY DISCIPLINE BOARD, CITY OF DETROIT, a municipal
corporation, LAIDLER & ZIELINSKI, PLLC,  CYRIL HALL, COLLINS,
EINHORN, FARRELL, PC.,

           Defendants.

_____/

## COMPLAINT

      NOW COMES the Plaintiff, Brenda K. Sanders, who brings this instant action against the above-named Defendants,  following a dismissal of an EEOC investigation on May 13, 2016 and in compliance with the Entirety of Controversy Doctrine, and in support of same states as follows:

## JURISDICTION

      1.     That this Court has jurisdiction over the subject matter of this civil action pursuant to Title Under 28 U.S.C. §1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., the American's With Disability Act of 1990, the Fair Debt Collection Practices Act, Public Law 111-203, Title X, 124 Stat.  2092 --2010 with appending claims under applicable Michigan statutes.

      2.     That, additionally, pursuant to 28 U.S.C. §1332, the instant Plaintiff is an individual that currently resides in the State of South Carolina.  The Defendants corporate and municipal entitles are incorporated under the laws of the State of Michigan and have their principal place of business in the State of Michigan.  Plaintiff further avers that the amount in controversy exceeds $75,000, not counting interest and costs of court, based on the injuries and damages that the Plaintiff has incurred.

## VENUE

3.      Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 Section 1391(b)(1)(2).

## Parties

4.      That the events that transpired relative to this instant cause of action took place in Detroit, Michigan and other venues in the Detroit Metropolitan area.

5.      That the Plaintiff is a black female that is also a licensed minister which was known to the Defendants during the tenure of her employment.

6..     That she is presently domiciled in the City of Barnwell, in the State of South Carolina.

7.      That the State of Michigan Judicial Tenure Commission is domiciled in Detroit, Michigan whose address is 3044 W. Grand Boulevard, Detroit, Michigan 48202.

8.      That the United States Government and its employees and agents are domiciled in Washington, D.C. with offices situated in Washington, D.C.

9.      That the Michigan Supreme Court is domiciled in Lansing, Michigan with offices situated in Lansing, Michigan and Detroit, Michigan at 925 W. Ottawa Street, Lansing, Michigan 48915.

10.     That Norman S. Miller is a practicing forensic psychiatrist holding himself out as Norman S. Miller MD., JD., PLLC domiciled in Lansing, Michigan and with professional offices located at 2760 E. Lansing Drive, East Lansing, Michigan 48823.

11.     That the Equal Employment Opportunity Commission is domiciled in Detroit, Michigan with offices situated at Patrick V McNamara Building, 477 Michigan Avenue, Room 865, and Detroit, Michigan 48226.

12.     That the U.S. Attorney's Office for the Eastern District of Michigan is domiciled in the City of Detroit and its physical offices are situated at 211 W. Fort Street, Suite 2001, Detroit, Michigan 48226.

13.     That the Michigan Attorney Grievance Commission is domiciled in Detroit, Michigan with physical offices situated at 535 Griswold Street, Suite 1700, Detroit, Michigan 48226.

14.     That the Attorney Discipline Board is the disciplinary arm of the Attorney Grievance Commission situated at 211 W. Fort Street, Suite 1410, Detroit, Michigan 48226.

2

15.     That the City of Detroit is a municipal corporation with its main offices located at the Coleman Young Municipal Building, Detroit, Michigan 48226.

16.     That Cyril Hall is a licensed attorney whose offices are located at 14650 W. Warren Avenue, Suite 200, Dearborn, Michigan 48126.

17.     That Laidler & Zielinski, PLLC are law offices located at 720 N. Lapeer Road, Suite 203, Lake Orion, Michigan 48362.

18.     That Brian Einhorn and Colleen Burke are attorneys employed with the law firm of Collins, Einhorn, Farrell, P.C. which is located at 4000 Town Center, Suite 909, Southfield, Michigan 48075.

19.     That the Plaintiff was an elected judge sitting on the 36th District Court bench which is situated at 421 Madison Avenue, Detroit, Michigan 48226.

20.     That at all times relative to the within-described actions, the Plaintiff was actively sitting as a judge on the 36th District Court bench.

## INTRODUCTION

21.     Plaintiff, Brenda K. Sanders, proceeding Pro Se, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., the American's With Disability Act of 1990 and the  with appending claims under applicable Michigan statutes.

22.     That on or about July 1, 2015, the Plaintiff was removed from her position as a judge serving at the 36th District Court.

23.     That the Plaintiff was removed based on an independent medical finding that she was "mentally unfit" to perform her judicial duties at the 36th District Court.

24.     That the Plaintiff had requested and had been given a medical leave and that the Plaintiff remained on medical leave at the time she was forcibly removed by the Michigan Supreme Court.

25.     That the Plaintiff requested to return to her place of employment with a reasonable accommodation, however, the Plaintiff's request was denied.

26.     That the basis of the Judicial Tenure Commission's Formal Complaint was that the Plaintiff wrote a private communication to the U.S. Attorney, Barbara McQuade, wherein she advised the same of various suspected criminal activities.

27.     That just prior to receiving medical confirmation that the Plaintiff was totally disabled due to knee arthritis, the Plaintiff had visited Dr. Phillip Schmidt and received gel shots in her knees which literally crippled the Plaintiff instead of rehabilitating her.

3

28.     That the Plaintiff suffered from debilitating knee conditions which warranted a medical finding by her personal physician that she was totally disabled thereby and needed corrective surgery.

29.     That in response to said medical finding, the Plaintiff presented the finding to the Human Resources Office of the 36th District Court.

30.     That the Plaintiff presented the findings of her personal physician on September 19, 2013 to the 36th District Court Human Resources office.

31.     That the Plaintiff was told by a 36th District Court Human Resources worker that she was in compliance with the protocol to be followed for an employee requesting medical leave from her employment at the court.

32.     That the Plaintiff called back to the Chief Judge's Office to verify that she too had received the request to take a medical leave and confirm that approval had been given.  That the Plaintiff was advised by one, Sheila McKee, that the medical leave requirements had been complied with and that there would be no further needed documents.

33.     That almost immediately after the Plaintiff gave due and proper notice of the medical leave request, the Michigan Judicial Tenure Commission commenced a Request for Investigation against the Plaintiff.

34.     That the Request for Investigation centered on the Plaintiff's medical condition and requests for documentation for same.

35.     That the Request for Investigation also targeted the Plaintiff's eviction from her house and claims that the house had a fraudulent title which entitled to her maintain possession of the house and that the Michigan Supreme Court was remotely connected to the law firm that caused the Plaintiff's eviction from her home.

36.     That shortly thereafter, the Plaintiff was the subject of an eviction by the Viviano Law Firm of Mt. Clemens Michigan on October 2, 2013.

37.     That the Plaintiff had alleged in litigation that the law firm was closely connected to Justice David Viviano of the Michigan Supreme Court.

38.     That the Defendant, Michigan Judicial Tenure Commission, also alleged, among other things, that the Plaintiff was "mentally unfit" to serve as a judge at the 36th District Court.

39.     That after the official court proceedings the Plaintiff was wrongfully and fraudulently removed from her position as a judge.

4

40.     That the basis of the Plaintiff's removal was allegedly her mental unfitness. That the Plaintiff had also given the Defendant notice that she was unable to properly and effectively perform her job because of her medical knee condition.

41.     That Plaintiff had just been assigned the Arraignment docket to preside over on a full-time basis.

42.     That the Plaintiff has lost her right to choose the docket that was most complimentary to her medical condition because she was not able to assert her seniority over the other judges on the bench of the 36th District Court.

43.     That the Plaintiff was advised by Judge Ronald Giles, the head of the Criminal Division of the 36th District Court, that she was needed on the Criminal Docket in order to assist to alleviate docket congestion.

44.     That the Defendant, Michigan Judicial Tenure Commission, filed a Formal Complaint against the Plaintiff questioning the Plaintiff's medical condition and demanding that the Plaintiff present and document her medical condition.

45.     That the Plaintiff immediately provided MRI scans and x-rays documenting her knee condition and also documented her need to have surgical intervention and other available treatments in order to alleviate her knee condition.

46.     That the Defendant, JTC, continued to demand that the Plaintiff submit to a psychiatric examination and the Plaintiff continually objected as a protest to the necessity of the examination and the Plaintiff argued that the examination was an attempt to further harass the Plaintiff while she was on her medical leave.

47.     That the Plaintiff objected to the request for a psychiatric examination because she had not failed in any way to perform her judicial duties in a satisfactorily manner.

48.     That the Defendant, JTC, tried to allege that the Plaintiff was "unfit" to perform her judicial duties, however, the Defendant failed to note that the Plaintiff had major surgery earlier in the year which required intensive care attention and that, although the Plaintiff was working, Plaintiff was still recovering from the emergency nine hour surgery.

49.     That the Defendant, JTC, commenced a very intense Request for Investigation, immediately after the Plaintiff, received permission to take the medical leave, harassing the Plaintiff at every turn.

50.     That said Request for Investigation commenced approximately five days after the Plaintiff gave notice of a request for medical leave along with a doctor's statement of Plaintiff's disability.

5

51.    That at the time of the Plaintiff's removal hearing, the Plaintiff had fallen ill in South Carolina and was unable to physically attend her hearing and was able to finance her travel and accommodations to stay in Michigan.    That the City of Detroit began reducing and cancelling Plaintiff's medical benefits as soon as the Plaintiff embarked on her medical leave.

I.

## VIOLATION OF THE AMERICAN'S WITH DISABILITY ACT OF 1990; ADA AMENDMENTS OF ACT OF 2008 (ADAAA)

52.    That the Plaintiff hereby incorporates Paragraphs 1-51 of this Complaint as if fully set forth herein.

53.    That the Plaintiff asserts that she was a qualified individual, who suffered with an extreme case of bilateral knee disability which was evidenced and confirmed by her private physician with an official diagnosis and notice of disability on or about September, 2013.

54.    That in addition, the Defendant, Michigan Judicial Tenure Commission employed a psychiatrist who falsely and fraudulently rendered a diagnosis that the Plaintiff suffered from "psychotic delusions" and that she was unfit to perform her duties as a judge after the Plaintiff reported certain possible criminal activities on the part of the Defendant to the office of the U.S. Attorney on or about December, 2013.

55.    That the Defendant, Michigan Judicial Tenure Commission adopted the professional opinion of Dr. Norman L. Miller and therefore, apparently perceived that the Plaintiff had a qualified mental disability.

56.    That the Plaintiff asserts that the Defendants, Judicial Tenure Commission and the Michigan Supreme Court, willfully and deliberately violated applicable provisions of the American's With Disability Act of 1990.

57.    That the Defendants unlawfully demanded that the Plaintiff submit to specified medical examinations and that the demands to submit to said medical and psychiatric examinations were unreasonable and prohibited by federal law.

58.    That the Defendants perceived that the Plaintiff had an actual disability or perceived disability at the time that it commenced actions to terminate her employment.

59.    That the Defendant hired a psychiatric consultant who illegally and fraudulently concluded that the Plaintiff was mentally unfit to perform her duties.

60.    That furthermore, the Plaintiff properly advised the Defendants that she had a prominent, one hundred percent disability as evidenced by her physician's statement of September 19, 2013.

6

61.     That the Defendants admit to a perceived disability in that regard and therefore, the Plaintiff is subject to the above-described provisions and protections of the Act.

62.     That the Defendants perceived a mental disability, although it may have not been actual, but failed to accommodate the Plaintiff.

63.     That the Defendants acquired the Plaintiff's medical records and in violation of the Act, published the information to the general public and other third parties which is proscribed by the Act.

64.     That the Defendants failed to keep Plaintiff's medical information confidential and to the contrary published the medical information to third parties which is proscribed by the Act.

65.     That the Plaintiff had a substantial limiting disability and the Defendants failed to accommodate her medical condition and/or disability.

66.     That the Plaintiff vigorously and categorically disputes the assertions of the Defendants that she had a substantial mental disability which prevented the performance of her judicial duties, however, if the same were true, pursuant to the above-referenced act, the Defendants failed to accommodate the Plaintiff in any way, but instead, terminated the Plaintiff.

67.     That the Plaintiff further alleges that the Defendants failed to advise the Plaintiff that the submission to a medical examination was on a voluntary basis only.

68.     That the Plaintiff was denied due process as it relates to the right to refuse an involuntary examination.

69.     That the Defendants terminated the Plaintiff for her failure, although lawful, to submit to a psychiatric examination.

70.     That the Defendants furthermore, published all of Plaintiff's medical information contrary to the provisions of the American's With Disability Act of 1990 which requires that said records and the information contained therein remain confidential.

71.     That the Defendants unlawfully published the Plaintiff's medical information, even though contested, to the Wayne County Gun Review Board in violation of the above Act.

72.     That the Defendants unlawfully published the medical findings of Dr. Norman Miller to court employees at the 36th District Court which is proscribed pursuant to the above Act.

73.     That the Defendants unlawfully published the medical findings of Dr. Norman Miller and Dr. Mendelssohn, even though contested, to the media at large.

7

74.     That the Defendants unlawfully published the medical findings of Dr. Norman Miller, even though contested, to the South Carolina Supreme Court.

75.     That the Defendants conducted hearings whereby the medical findings of Dr. Norman Miller, were divulged and published to the public.

76.     That the Defendants conducted medical examinations of the Plaintiff in contravention of Sec. 1630.13

77.     That as a result, the Plaintiff was wrongfully terminated from her position as a judge for her failure to submit to said psychiatric examination.

78.     That based on the false and misleading medical findings of Dr. Norman Miller, the Plaintiff was deemed "mentally unfit" to perform her judicial duties and discharged from her employment.

79.     That such a discharge is unlawful pursuant to the American with Disabilities Act of 1990 for the reason that the Plaintiff was fulfilling the legitimate expectations of her employer at the time of the removal.

80.     That the removal of the Plaintiff from her position as an elected judge gives rise to a reasonable inference of unlawful discrimination pursuant to the above-described Act.

81.     The removal of the Plaintiff from her position based on a mental disability was just a pretext for the Defendant's discriminatory animus as Plaintiff's counsel informed the Plaintiff on October 8, 2013 that she was "going to lose her job because the Plaintiff did not volunteer to work on committees at the court".

82.     That the Plaintiff was never made of aware that she was required to serve on any committees at the court by email, word of mouth, telephone, or otherwise by court staff.

83.     That the Plaintiff incurred substantial compensatory damages and suffered great loss as a result of the unlawful discrimination by the Defendant and she should be compensated for the same.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

II.

## HOSTILE WORK ENVIRONMENT

84.     That the Plaintiff hereby incorporates Paragraphs 52-83 of this Complaint as if fully set forth herein.

85.     That the Plaintiff was the subject of illegal investigations and "set up" by the Judicial Tenure Commission on more than one occasion.

86.     That the Defendants created a hostile work environment by concealing vital information from the Plaintiff and then deviously charging the Plaintiff with misconduct.

87.     That on or about February 2, 2009, which was the Plaintiff's first day sitting as a judge on the bench; the Judicial Tenure Commission served the Plaintiff with a copy of a Request for Investigation.

88.     That the Request for Investigation focused on Plaintiff's candidacy for Mayor of the City of Detroit.

89.     That the Defendants waited approximately ninety days after the filing of a Citizen's complaint before it informed the Plaintiff of the existence of same.

90.     That the citizen's complaint was filed on or about November 7, 2008 alleging that the Plaintiff was a judicial officer running for the office of mayor of the City of Detroit and therefore the Plaintiff violated the rules that a judge cannot run for a non-judicial office.

91.     That the Judicial Tenure Commission improperly and fraudulently concealed the filing of the citizen's complaint until after the Plaintiff was sworn in as a judge of the 36th Judicial District Court.

92.     That the Plaintiff duly and properly inquired with the State Court Administrative Office about any legal problems surrounding her sitting as a judge and formal swearing in as a judge **before** going forth with the swearing in.

93.     That the Plaintiff contacted Deborah Green of the State Court Administrative Office to inquire about the legality of her swearing in and whether or not she was on sound legal footing.

94.     That Deborah Green failed to respond to the Plaintiff's inquiries, and instead, a couple of days later, the Plaintiff received a telephone call from Chief Judge Marilyn Atkins that she was going to swear in the Plaintiff as a judge.

95.     That Judge Marilyn Atkins had initially advised the Plaintiff that there was an issue with her candidacy for mayor, but did not specify the nature of the issue.

96.     That had the Plaintiff been advised that there was the existence of a citizen's complaint before she was sworn in as a judge, the Plaintiff would have elected not to go forward with the swearing in.

97.     That the Defendants cunningly waited until the Plaintiff had completed judges'school and training with other judges when they served her with a misconduct complaint on her first day as a judge officially presiding over cases at the court.

98.     That the Defendants threatened to file a request for suspension of her pay immediately after sitting on the bench which would have damaged the Plaintiff's reputation immediately before the mayor's race.

99.     That the Defendants moved to silence the Plaintiff by indicating that she was going to be the subject of a formal complaint and other disciplinary action that would only cause her to lose her job and her pay.

100.    That as a result, the Plaintiff did not campaign or speak relative to her candidacy for Mayor of the City of Detroit.

101.    That the Defendants suspended the Plaintiff's pay during the time immediately preceding the special election for Mayor of the City of Detroit.

102.    That the Defendants could have avoided the disciplinary actions by simply advising the Plaintiff before her swearing in that there was a citizen's complaint challenging her legal participation in the mayor's race.

103.    Furthermore, the Plaintiff was not a judge seeking the office of mayor in the 2009 special election.

104.    The Plaintiff was a judicial candidate and not yet elected to the office of judge at the time she entered the race for Mayor of the City of Detroit.

105.    That furthermore, the Defendants maintained a hostile work environment by constantly harassing Plaintiff in her workplace by denying the Plaintiff the right to assert seniority over other judges as it concerned a choice of dockets.

106.    That the Plaintiff was denied access to political mail that was sent to her by political entities.

107.    That the Plaintiff was assigned excessive workloads more than her colleagues at the court.

108.    That the Defendants engaged in a series of harassments against the Plaintiff which were unlawful and illegal.

109.    That the Defendants unlawfully denied the Plaintiff access to her State of Michigan pay stubs by constantly alleging that she had the wrong address on her work file.

110.    That the Plaintiff never received a pay stub from the Human Resources Department of the Michigan Supreme Court and the reason cited was that the Plaintiff had the wrong address on her file.

111.    That no matter how many attempts the Plaintiff made to correct the "wrong address", the Plaintiff was still advised that she was not receiving her work pay stubs because she did not maintain the correct address on her employment file.

112.    That as a result, the Plaintiff was unable to gain access to numerical calculations relating to the amount of her wages she was receiving on a bi-weekly basis.

113.    That in actuality, the Defendants were concealing the unlawful and fraudulent taking of monies from her paycheck on a bi-weekly basis.

114.    That the Plaintiff alleges that thousands and thousands of dollars was taken unlawfully and fraudulently from her paycheck over the six years of her tenure.

115.    That the Michigan Supreme Court failed to provide explanations pay stubs that were generated while she was on suspension after suspension.

116.    That during the Plaintiff's tenure at the 36th District Court she was wrongfully suspended over four times and correspondingly, her wages were suspended wrongfully and fraudulently.

117.    That the Plaintiff was never notified by email or otherwise of changes in the court's payment methods and how an employee was to gain access to payment information.

118.    That the Plaintiff was denied the opportunity to preside over "high profile" cases unlike her colleagues that sat on the bench who had less seniority and less experience.

119.    That the Plaintiff was singled out at a judges staff meeting August or September of 2013 by Judge Michael Talbot when he sat beside the Plaintiff and yelled to the top of his lungs that the assignment of judges to the respective dockets was not going to be based on seniority and therefore subjected the Plaintiff to public ridicule.

120.    That the Plaintiff as a sitting judge was sent a memo that she could not dismiss certain traffic cases without the telephone approval of Judge Michael Talbot which was an attempt to intrude upon and impair the Plaintiff's judicial authority.

121.    That the Plaintiff was singled out and made to sit on the "criminal docket" of the 36th District Court, while her colleagues all had a choice about the docket in which they wanted to preside.

122.    That immediately after the Plaintiff was made to sit on the criminal docket, she became the subject of a Writ of Superintending Control cause of action brought by the Wayne County Prosecutor's office.

123.    That while forced to sit on the criminal docket of the 36th District Court, the Defendants failed to defend the actions of the Plaintiff as she was the subject of a Writ of Superintending Control cause of action.

124.    That the Writ of Superintending Control challenged the Plaintiff's standard practice of excluding witnesses at the preliminary examinations.

125.    That the challenges began immediately after the Plaintiff was assigned, against her will, to preside over criminal cases at the 36th District Court.

126.    That the Plaintiff was denied the use of the court counsel to defend against the allegations brought in the Writ of Superintending Control case.

127.    That the Plaintiff was forced to defend herself in pro per against the allegations brought in the Writ of Superintending Control case.

128.    That Judge Michael Talbot incorrectly reasoned that the Plaintiff was not entitled to legal representation by the 36th District Court as the charges related to her rulings as a judge at the court.

129.    That the 36th District Court had an obligation to defend the Plaintiff against the Writ of Superintending Control brought by the Wayne County Prosecutor and the Plaintiff was treated as an outsider as it related to the court's policy to defend judges when they are the subject of such proceedings.

130.    That as it relates to the Plaintiff, the 36th District Court departed from its normal policy to defend the Plaintiff in the Writ of Superintending Control action.

131.    That the refusal on the part of the 36th District Court to defend the Plaintiff in an action brought by the Wayne County Prosecutor's Office was discriminatory because the Court departed from its standard policy and singled the Plaintiff out to be embarrassed, humiliated.

132.    That the Defendant, 36th District Court failed to give the Plaintiff access to her emails and voicemail messages while on medical leave.

133.    That the Defendant, 36th District Court, failed to provide Plaintiff's mail to her on a steady basis while she was on medical leave from the court.

134.    That the JTC filed the Formal Complaint to remove her from office two days after the death of the Plaintiff's mother and requested the expeditious suspension of her wages during the week of her mother's funeral.

12

135.    That the JTC failed to pay wages to the Plaintiff on the date of her mother's funeral which was September 15, 2016.

136.    That the JTC sought to further embarrass and humiliate the Plaintiff during the week of Plaintiff's mother as it related to newspaper reports alluding to the "alleged mental illness of the Plaintiff" which corresponded with the presence of the Plaintiff's family members who attended the funeral from several states.

137.    That during the same week of the funeral of the Plaintiff's mother, Plaintiff brother's appeal was denied in South Carolina.

138.    That the Defendant, JTC, unlawfully and illegally contacted and communicated with the creditors of the Plaintiff in order to secure their testimony during the disciplinary hearing in violation of the Fair Debt Collection Act.

139.    That the Defendant, JTC, unlawfully and illegally disclosed to the public, information that was confidentially hand-delivered to the U.S. Attorney General in violation of the Crime Reporting Privilege.

140.    That the Plaintiff was sent various intimidating and harassing messages on her cell phone such as a hanging Pinocchio girl swinging back and forth;

141.    That the Plaintiff was also sent harassing and intimidating messages about IRS audits before she actually received actual notice of IRS audits.

142.    That the Plaintiff's calendar docket was designed to force the Plaintiff to work around holiday times. That the Plaintiff complained, but the practice continued.

143.    That the Defendant, City of Detroit, modified and cancelled the Plaintiff's medical insurance benefits while she was on her formal medical leave and prior to her removal as a judge and failed to inform the Plaintiff.

144.    The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII, Rehab Act, and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

## III.
## DISCRIMINATION ON THE BASIS OF RACE, GENDER AND RELIGION CONTRARY TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, Sec. 2000e-2(a)

145.    That the Plaintiff hereby incorporates Paragraphs 84 through 144 of this Complaint as if fully set forth herein.

146.    That the Defendants, State of Michigan, Michigan Supreme Court and Michigan Judicial Tenure Commission engages in a pattern of conduct that was continually discriminatory to the Plaintiff based on her status as a black female and a licensed minister;

147.    That the Defendants, Michigan Judicial Tenure Commission and Michigan Supreme Court commenced misconduct proceedings against the Plaintiff in 2009 based on a citizen's complaint that was authored by a former political opponent of the Plaintiff that claimed he was the first openly gay judge appointed by Governor Jennifer Granholm to the Detroit bench.

148.    That the Plaintiff was initially a challenger in the primary race but lost by a little over a thousand votes in the primary election race which was conducted in August, 2006.

149.    That because the Plaintiff had come so close to prevailing in second place in the August primary and the Plaintiff suspected foul play as to the counting of the absentee votes, the Plaintiff mounted a write-in campaign for 36th Judicial District Judge in the same race for the general election.

150.    That the Plaintiff also lost her write-in bid for Judge of the 36th District Court.

151.    That the Defendants chose to proceed with misconduct proceedings with the former openly gay male as the citizen's complainant based on the false principle that the Plaintiff was a judge at the time that she entered the 2009 Special Election for Mayor of the City of Detroit.

152.    That the Plaintiff perceived that the Michigan Judicial Tenure Commission was attempting to retaliate against the Plaintiff, a black female and a licensed minister, for statements made in the Metro Times newspaper and Plaintiff's decision to continue a write-in campaign against the openly gay male judge.

153.    That the Michigan Judicial Tenure Commission had prior knowledge, along with the openly gay male judge, that the Plaintiff was a licensed minister.

154.    That the Michigan Judicial Tenure Commission and the Supreme Court acted as though they wanted to make the Plaintiff, a black female an licensed minister, pay for making statements about her personal beliefs as it concerned the white openly gay male judge.

155.    That the JTC began a campaign to harass and intimidate the Plaintiff, a black female and a licensed minister, from the inception of her employment as retaliation for her personal religious beliefs regarding homosexuality.

14

156.    That the JTC even went so far as to communicate to the Plaintiff that to speak about God from the bench was considered misconduct for a judicial officer.

157.    That the Defendant also had a long, sorted history of primarily targeting black female judges for prosecution for misconduct.

158.    That the Plaintiff maintains that the JTC wanted to retaliate so badly for the personal statements made by the Plaintiff, a black female and a licensed minister, against the openly while gay male judge, that it proceeded to prosecute the Plaintiff fraudulently while failing to disclose the existence of the citizen's complaint filed by the openly white gay judge. That the openly gay judge was defeated in his bid to retain his seat at the 36th District Court.

159.    That while Plaintiff could not document these beliefs of prejudice because of her status as a licensed minister right away, the documentation came as she was prosecuted the second time for misconduct.

160.    That the Plaintiff was illegally and fraudulently disciplined for misconduct as a judge when she was not actually a judge at the time that she entered the mayor's race for the City of Detroit. That the Defendants knew that Plaintiff did not qualify as a judge and instead, waited until the Plaintiff was sworn in, trained, and then finally presiding over cases before it publicly served her with its first Request for Investigation against the Plaintiff.

161.    That the Plaintiff began to receive pornography on her social media web pages that were homosexual in nature. That the Plaintiff reported all of the obscene and unsolicited images on her Facebook, Twitter and Periscope, and Instagram pages as unwanted.

162.    That the Plaintiff was constantly objected to and erased the lesbian pornographic images, but the violations continued on a daily basis.

163.    That the Defendants were a party to and or passively consented to the sending of pornographic images to the Plaintiff's phone at various times.

164.    That said pornographic messages were contemporaneous with letters written or communications to or about the Defendants.

165.    That furthermore, the Plaintiff was constantly harassed at her physical residence by parties under the dominion, control or direction of the Defendants.

166.    That the Plaintiff's tires on both of her vehicles were slashed on or about August 29, 2012. A police report was filed with the Detroit Police Department.

167.    That the Plaintiff was the target of numerous attempted illegal entries into her physical residence while she was at her workplace from 2011 through to the time she was illegally evicted from the residence on October 30, 2013. That the Defendants actually entered

the Plaintiff residence while she was at work on April 22, 2013 without the Plaintiff's permission or knowledge.

168.    That feces was often thrown on the Plaintiff's lawn during the night as a tactic to intimidate and scare the Plaintiff.

169.    That the Defendants sent an armed gunman to make repairs at the residence which was designed to harass and intimidate the Plaintiff.

170.    That the Plaintiff's colleagues presided over and litigated cases where the Plaintiff was a litigant without recusing themselves.

171.    That an order was entered restricting the Plaintiff's entry upon the courthouse grounds and requiring that she be searched upon every attempt to enter the building.

172.    That on March 3, 2014, the Plaintiff was advised by her attorney that she was banned from her workplace after she returned from a pre-scheduled vacation.

173.    That prior to the order banning the Plaintiff from the courthouse premises, the Plaintiff entered the premises and found the inner and outer door to her chambers standing wide open inviting thieves and robbers into her chambers.

174.    That the furniture was displaced in the Plaintiff's chambers and not situated in the fashion and manner in which she left it when she began her medical leave.

175.    That additionally, the Plaintiff's judicial robes were thrown across the room and were found lying in the outer office of her chambers in mid-January, 2014.

176.    That the Plaintiff's cash that was in her chambers was missing and could not be located.

177.    That the Defendants have embarked on a constant campaign to slander the Plaintiff and to allege that the Plaintiff is dishonest.

178.    That the Plaintiff has voluntarily submitted to polygraph examinations in which the Plaintiff was found to be conclusively truthful.

179.    That since that time, the Defendants have continued their efforts to slander and libel the Plaintiff by claiming that the Plaintiff is dishonest.  That the Plaintiff has offered to submit to further polygraph testing for the Defendants, however, the offers have been rejected.

180.    That instead, the Defendants have continued their campaign to damage the Plaintiff's name by asserting that the Plaintiff is dishonest.

181.    That the Defendant's engaged in a pattern of retaliation against the Plaintiff which began from the Plaintiff's first day on the job as a judge.

16

Judge Kenneth J. King

182.    That the Plaintiff hereby incorporates Paragraphs 145 through 181 as though fully set forth herein word for word and further states that:

183.    That Judge Kenneth J. King served as Chief Judge of the 36th District Court from January, 2012 until April, 2013.

184.    That for administrative purposes Judge King often made contact with the Plaintiff.

185.    That in an attempt to harass the Plaintiff, Judge King conspired to single out the Plaintiff.

186.    That soon after Judge King became Chief Judge of the court he began making sexual overtures toward the Plaintiff.

187.    In February, 2012, while the Plaintiff was hospitalized in Harper Hospital after having major surgery, Kenneth King told the Plaintiff that he loved her.

188.    That the comment "I love you" was overheard by someone sitting in the Plaintiff's hospital room and remarks were made in response to same.

189.    That Judge King invited the Plaintiff in to his chambers and made advances toward the Plaintiff regarding moving into her home.

190.    That the Plaintiff often observed Judge Kenneth King kissing on the other judges in the hallway.

191.    That Judge Kenneth King suggested to the Plaintiff during a private meeting in his chambers that "he move into the Plaintiff's house".

192.    That the Plaintiff responded to Judge Kenneth King "Where I am I going to move"? and Judge Kenneth King responded "to the Riverfront".

193.    That after that time, the Plaintiff made her business to avoid Judge Kenneth King for the reason that he appeared to be serious about his comments to her as it related moving in.

194.    That soon thereafter, the Plaintiff encountered Judge Kenneth King while he was passing around a bereavement card for a deceased police officer.

195.    That the Plaintiff recalls that Judge Kenneth King wanted her to write on his back when she signed the card for the deceased police officer.

196.    That the Plaintiff also recalls attending a bowling event where Judge Kenneth King remarked to her "that I was feeling on his butt" when nothing was farther from the truth.

17

197.    That the Plaintiff resisted the advances of Judge Kenneth King and attempted to conduct business as though the comments were not made.

198.    That Judge Kenneth King would often venture into the Plaintiff's courtroom and sit in the jury box until the Plaintiff completed her docket.

199.    That Plaintiff also relates that when she was training as a judge and she was assigned to Judge King that he attempted to harass the Plaintiff by dropping his gun in front of the Plaintiff on the floor beside the Plaintiff's foot. That that was the first time sitting with Judge Kenneth King.

200.    That Judge Kenneth King would call her very early in the morning telling the Plaintiff that he wanted to meet with her and he would inquire with the Plaintiff saying "What time are you coming to work"?

201.    That the Plaintiff resisted in notions of a personal relationship with Judge Kenneth King.

202.    That after the Plaintiff encountered a legal dispute regarding her residence; Judge King informed her that he had the case on his desk.

203.    That the Judge Kenneth King informed the Plaintiff that he was in charge of transferring the case to another judge, but the transfer did not take place for several months.

204.    That during that time, Judge Kenneth King, informed the Plaintiff that he wanted to move into her house.

205.    That Judge Kenneth King informed the Plaintiff that he had passed her case around to all of the judges at the court.

206.    That the Plaintiff believed that Judge Kenneth King was having personal discussions with an attorney for the Defendant, PFG Mortgage Trust , whose attorney's office was situated at Ford Field in an attempt to sabotage the Plaintiff's attempts to maintain possession of her house.

207.    That the Plaintiff believes that Judge Kenneth King passed her landlord-tenant case around to all of the judges of the 36th District Court in an attempt to embarrass the Plaintiff.

208.    That when it was time for the election, Judge Kenneth King sent email messages to the Plaintiff and some other judges with the handle name hangman0228@yahoo.com in an attempt to intimidate the Plaintiff.

209.    That the Plaintiff also received messages from a cell phone application displaying a female Pinocchio hanging in the air as if hanging by a noose

18

210.    That Kenneth King was the author of many other events designed to harass and intimidate the Plaintiff.

United States of America:

211.    That the Plaintiff hereby incorporates Paragraphs 181 through 210 as though fully set forth herein word for word and further states that:

212.    That the Plaintiff has observed mysterious planes and on the ground harassment at her home in South Carolina and also at her former home in Michigan.

213.    That mysterious planes have flown in close proximity to the Plaintiffs home in order to intimidate and harass the Plaintiff because of Plaintiffs religious views.

214.    That the Plaintiff discovered the same when her vehicle was taken from her property on or about September 18, 2015.

215.    That the planes had been flying in close proximity to the Plaintiffs residence for approximately five months prior to the Plaintiffs discovery that the planes were suspected to be from the U.S. military.

216.    That the Plaintiff discovered that the planes were intimidating in nature and flown in proximity to her residence to intimidate and frighten her family.

217.    That the planes were dispensing a trail like material which lingered over the Plaintiffs residence long after the planes left the area.

218.    That the Defendant has conspired with the Plaintiffs former employer, courts, lawyers, doctors and others to harass and intimidate the Plaintiff and the Plaintiffs family wherever they go.

219.    That said harassment was also imposed in a deliberate and intentional manner at the various residences of the Plaintiff and caused substantial damage to the Plaintiff and the Plaintiffs family.

220.    That the Plaintiff continues to suffer grave embarrassment, humiliation, mental anguish, sorrow, despair, emotional upset, and stress, as a result of the Defendants' actions.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

IV.

## VIOLATION OF CRIME REPORTING PRIVILEGE

221.    That the Plaintiff incorporates Paragraphs 1 through 219 as if fully set forth herein word for word.

222.    That the Plaintiff paid a personal visit to Defendant, United States Attorney's Office, on or about December 23, 2013.

223.    That the Plaintiff hand-delivered a sealed letter that was addressed to United States Attorney Barbara McQuade.

224.    That the Plaintiff requested that the letter be directly delivered to Barbara McQuade and the Plaintiff explained that the letter was "confidential".

225.    That the Plaintiff presented information that she had received about possible criminal activity.

226.    That the Plaintiff offered to polygraph as it related to the offered information and also indicated that she was available for an interview or further questioning, if needed.

227.    That the Plaintiff was never called for a personal interview and neither was the Plaintiff questioned by any other person or persons regarding the information provided in her letter to the United States Attorney's Office in order to verify her story.

228.    That prior to divulging the contents of the Plaintiff's letter to her employer, who was also mentioned in the letter, the U.S. Attorney's office failed to notify the Plaintiff or interview the Plaintiff to confirm her claims of misconduct.

229.    That the United States Attorney's Office contacted the Plaintiff's employer, the 36th District Court, and divulged the information that was given to its office in the private communication to U.S. Attorney Barbara McQuade.

230.    That in response, the 36th District Court Special Administrator, Judge Michael Talbot, issued an administrative order restricting the entry of the Plaintiff into the courthouse and provided that she must first be searched because she was a possible danger to herself and other judges.

231.    That the communication submitted to the United States Attorney's Office was the subject of and the focus of the investigation of the Plaintiff.

232.    That the United States Attorney's Office violated the Crime Reporting Privilege/Rule by divulging information that was confidential and that contained possible evidence of criminal activity which Plaintiff was requesting to be investigated.

20

233. That said decision to contact the Plaintiff's employer was the direct cause of the Plaintiff's removal from her position as a judge.

234. That the Plaintiff suffered innumerable and substantial damages as a result of the removal from her position as a judge.

235. That had the United State's Attorney office taken the time to interview the Plaintiff and to verify the Plaintiff's claims; the Plaintiff would not have been deemed to be mentally unfit to execute her judicial duties and slandered in the public.

236. That the Plaintiff's gun licensing privileges would not have been suspended but for the improper and negligent release of the Plaintiff's letter to the 36th District Court.

237. That the U.S. Attorney's Office was the direct and proximate cause of the harm caused by the Plaintiff's employer, the 36th District Court.

238. That the Plaintiff suffered innumerable and substantial compensatory damages as a result of the actions taken by the U.S. Attorney's Office.

239. That the Plaintiff suffered grave embarrassment, humiliation, mental anguish, sorrow, despair, emotional upset, and stress, as a result of the Defendants' actions.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

## V.

## ABUSE OF PROCESS

240. That the Plaintiff incorporates Paragraphs 1 through 239 as if fully set forth herein word for word.

241. That the Defendants, Michigan Judicial Tenure Commission and Michigan Supreme Court made improper use of the court's process.

242. That the ulterior or improper motive of the Michigan Judicial Tenure Commission and the Michigan Supreme Court in exercising such illegal use of process was to retaliate against the Plaintiff for reporting the suspicious deaths of two judges and the wrongful embezzlement of monies from her paychecks.

243. That damage to the Plaintiff resulted from such abuse of process

244. That the Plaintiff asserts that the Michigan Judicial Tenure Commission and the Michigan Supreme Court acted with malice.

245.    That the Plaintiff suffered grave embarrassment, humiliation, mental anguish, sorrow, despair, emotional upset, and stress, as a result of the Defendants' actions.

246.    That the Plaintiff sustained damages as a result of the Defendants unlawful and abusive use of the court's system.

247.    That as result of the Michigan Judicial Tenure Commission and the Michigan Supreme Court's unlawful and abusive use of the court's process, the Plaintiff is seeking punitive damages and exemplary damages from the Defendants.

WHEREFORE, the Plaintiff respectfully prays for a judgment to enter granting her the relief that she seeking for compensatory damages and a designation of malice for an award of treble damages for the above-referenced cause of action.

## VI.

### VIOLATION OF FAIR DEBT COLLECTION ACT
### Public Law 111-203, Title X, 124 Stat.  2092 –2010

248.    That the Plaintiff incorporates Paragraphs 1 through 247 as if fully set forth herein word for word and states further that:

249.    That the Defendant, Michigan Judicial Tenure Commission communicated with the Plaintiff's creditors and disclosed information about the Plaintiff's debts to the public in contravention of the above cited Act.

250.    That the Plaintiff was a consumer pursuant to the Fair Debt Collection Practices Act.

251.    That the Plaintiff incurred the debt from Toyota Motor Company for a primarily consumer purpose and not a business purpose. It was a consumer debt incurred for household or personal use.

252.    That the Judicial Tenure Commission conspired with the Plaintiff's creditors to harass the Plaintiff and her family at her residence in South Carolina for the purpose of collecting a debt and securing false and unreliable testimony from her creditor as to the Plaintiff's mental fitness.

253.    That the debt collector pursuant to the Fair Debt Collection Practices Act. is defined as anyone other than the original creditor that the Plaintiff initially owed money.

254.    That the debt collector, the JTC and Toyota Financial, violated the provisions of the Fair Debt Collection Practices Act.

255.    That the Plaintiff suffered injury as a result of the JTC' and Toyota's attempt to collect the debt that the Plaintiff had incurred.

256.    That the Plaintiff suffered grave embarrassment, humiliation, mental anguish, sorrow, despair, emotional upset, and stress, as a result of the Defendants' actions.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

VII.

## VIOLATION OF THE WHISTLEBLOWER RETALIATION ACT PURSUANT TO MCL 15.362

257.    That the Plaintiff hereby incorporates Paragraphs 1 through 256 as though fully set forth herein word for word and states further that:

258.    That the Plaintiff is an employee or person covered the specific statutory or common law relied upon for action.

259.    That the Defendant, State of Michigan, is an employer or person covered under the specific statutory common law relied upon for the action.

260.    That the Plaintiff engaged in protected whistleblower activity.

261.    That the Defendants, 36th District Court, Michigan Judicial Tenure Commission and Michigan Supreme Court, knew or had knowledge that the Plaintiff engaged in such activity.

262.    That the retaliation against the Plaintiff was motivated, at least in part, by the employee's engaging in protected activity;

263.    That the Plaintiff can demonstrate by a preponderance of the evidence that she would not have been subject to an adverse action in the absence of their protected whistleblower conduct.

264.    That the Plaintiff was immediately deemed '' psychologically delusional''by her employer upon learning that the Plaintiff had made a confidential report of possible criminal activity to the U.S. Attorney's Office.

265.    That the Defendant, 36th District Court and the Judicial Tenure Commission failed to interview or communicate with the Plaintiff and, instead, elected to issue an administrative order restricting the Plaintiff's access into her workplace and requiring that the Plaintiff be searched by court security.

266.    That on March 3, 2014, the Plaintiff was advised by her attorney that she was banned from entry into her workplace for any reason.

267.    That the Defendants, 36th District Court, the Michigan Judicial Commission and the Michigan Supreme Court proceeded to charge the Plaintiff via a Formal Complaint based primarily on the confidential report of possible criminal activity which was communicated to the U.S. Attorney's Office.

268.    That the Plaintiff was discharged or otherwise discriminated against with respect to her compensation, terms, conditions or privileges or employment; or suffered some other wrong actionable under state tort or contract theory;

269.    That the Defendants, Michigan Judicial Tenure Commission and Michigan Supreme Court entered an Order on July 1, 2015 allegedly removing the Plaintiff from her position as a judge.

270.    That Plaintiff's attorney failed to inform the Plaintiff that she had been removed from her position as a judge even when she made a direct inquiry about the same to her attorney of record.

271.    That the Plaintiff suffered grave embarrassment, humiliation, mental anguish, sorrow, despair, emotional upset, and stress, as a result of the Defendants' actions.

272.    That the Plaintiff suffered irreparable harm and incurred additional substantial damages due to the retaliatory conduct of the 36th District Court, Michigan Judicial Commission and the Michigan Supreme Court.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

VIII.

**FRAUDULENT MISREPRESENTATION**

273.    That the Plaintiff incorporates Paragraphs 1 through 272 as though fully set forth herein.

274.    That the Defendant, Michigan Supreme Court made and offered material representations to the Plaintiff regarding her pay stubs and electronic wage deposits on a bi-weekly basis.

275.    That the Michigan Supreme Court also misrepresented to the Plaintiff that it did not conspire or partner with the Viviano Law Firm to unlawfully and fraudulently take

24

ownership possession of the Plaintiff's residence located at 115 Sand Bar Lane, Detroit, Michigan.

276. That the representations were false and the Defendants knew the representations were false.

277. That the Defendants make the representations recklessly without the knowledge of the truth and a positive assertion.

278. That the Defendant made the representations with the intention that the Plaintiff act upon it.

279. That the Plaintiff did act in reliance upon it, and

280. That as a result of reliance upon the material representations made by the Defendant, Michigan Supreme Court, and the Plaintiff incurred substantial compensatory damages and economic losses.

281. That the Plaintiff suffered emotional distress, mental anguish, emotional upset, stress, embarrassment, humiliation, anger, as a result of the defamatory statements made by the Defendants.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

IX.

## DEFAMATION

282. That the Plaintiff incorporates Paragraphs 1 through 281 as though fully set forth herein.

283. That the Defendants, Michigan Judicial Tenure Commission and Michigan Supreme Court, the Michigan Attorney Grievance Commission, the Michigan Attorney Discipline Board and Dr. Norman Miller made false and defamatory statements concerning the Plaintiff.

284. That the Attorney Grievance Commission and the Attorney Discipline Board failed to provide due process to the Plaintiff by failing to properly notify the Plaintiff of pending proceedings wherein the Plaintiff would be afforded an opportunity to appear and testify and/or render other relevant evidence regarding her mental fitness.

25

284.    That the Defendants, Michigan Judicial Tenure Commission, Michigan Supreme Court and 36th District Court made unprivileged publications to third parties such as the Wayne County Weapons Board, The general news media and South Carolina attorneys.

285.    That the above cited Defendants are at fault amounting to at least negligence due to their reckless and undocumented publications.

286.    That the Plaintiff offered to polygraph regarding all of her assertions, however Plaintiff's offers were rejected by the Defendants.

287.    That the Plaintiff suffered emotional distress, mental anguish, emotional upset, stress, embarrassment, humiliation, anger, as a result of the defamatory statements made by the Defendants.

288.    That either actionability on the statements irrespective of special harm or the existence of special harm was caused by the false publications.

289.    That the Plaintiff suffered actual damages as a result of the defamatory statements including the loss of her employment.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

XI.

## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

290.    That the Plaintiff incorporates Paragraphs 1 through 289 as if fully set forth herein and states further that:

291.    That the Defendant, Michigan Judicial Tenure Commission, interfered with the business relationship that the Plaintiff established with her creditors, Toyota Motor Corporation and former landlords.

292.    That the Defendants, Michigan Supreme Court and 36th District Court interfered with her relationship with PFG Mortgage Trust as it related to the possession and ownership of her residence situated at 115 Sand Bar Lane, Detroit, Michigan.

292.    That the Defendants, JTC, the Michigan Supreme Court, the 36th District Court and the U.S. Government  also interfered with Plaintiff's business relationship's on a day-to-day basis throughout her tenure as a judge and even after her removal as a judge.

293.    That there was the existence of valid business relationships or expectancies between the cited entities.

26

294.     That the expectancies were of a reasonable likelihood or probability and not mere wishful thinking.

295.     That the Defendants had knowledge of the relationship expectancies on the part of the Plaintiff.

296.     That the Defendants had dominion and control over all of the parties involved in the Plaintiff's business relationships.

297.     That the Defendants conspired to intentionally interfere with the Plaintiff's business relationships inducting or causing a breach or termination of the relationship or expectancy.

298.     That the Plaintiff suffered emotional distress, mental anguish, emotional upset, stress, embarrassment, humiliation, anger, as a result of the defamatory statements made by the Defendants.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

299.     That the Plaintiff incorporates Paragraphs 1 through 298 as though fully set forth herein.

300.   That the Plaintiff filed for an investigation with the Equal employment Opportunity Commission (hereinafter referred to as the "EEOC") on June 29, 2015,

301.     That the Plaintiff was unaware that an Order was about to be signed for her removal.

302.     That the Plaintiff provided the information as it was requested by the EEOC Investigator, Marlea Applegate,

303.     That the EEOC investigation seemed to be halted until on or around the beginning of April, 2016. '

304.     That the investigator then recommenced communications with the Plaintiff indicating that she was moving forward with the same.

305.     That on or about April 29, 2016, the Plaintiff's sole mechanism of communicating with the Investigator, a Microsoft account, was hacked and closed causing Plaintiff a great inconvenience and handicapping the Plaintiff's swift response to the inquiries of the Investigator.

27

306.     That when the Plaintiff advised the investigator of same, the EEOC investigator only allowed the Plaintiff a few days to relocate information.

307.     That during that same time period, the Plaintiff's cell phone was destroyed which also contained valuable information about the Plaintiff's work environment.

308.     That Investigator Applegate scheduled an oral interview with the Plaintiff and then failed to conduct the oral interview with the Plaintiff as promised.

309.     That during the period of that the Plaintiff advised of the attempt to sabotage her efforts to comply with Investigator Applegate, the investigator suddenly and abruptly closed the investigation without allowing the Plaintiff to submit the balance of information that was requested.

310.     That Marlea Applegate further sabotaged the investigation against the Defendants by refusing to forward the Plaintiff's emails back to the Plaintiff.

311.     That Investigator Applegate negligently and intentionally dismissed the Plaintiff's claims without completing her investigation against the Defendants.

312.     That Investigator Applegate's failure to complete her investigation against the Defendant, Judicial Tenure Commission, caused great harm to the Plaintiff.

313.     That the Plaintiff suffered emotional distress, mental anguish, emotional upset, stress, embarrassment, humiliation, anger, as a result of the defamatory statements made by the Defendants.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

## LEGAL MALPRACTICE

314.     That the Plaintiff hereby incorporates Paragraphs 1 through 313 as though fully set forth herein word for word and further states that:

315.     That pursuant to legal contract, Defendants, Collins, Einhorn, Farrell PC, Cyril Hall and Laidler& Zielinski, PLLC. filed an appearance with the Judicial Tenure Commission on

316.     That the Defendants held themselves out as legal practitioners with expertise in the area of employment law coupled with expertise in the area of judicial misconduct defense litigation.

28

317.    That on or about September, 19, 2013,the Plaintiff gave notice to her employer, the 36th District Court that she was requesting a medical leave of absence for the purpose of receiving surgical care and said request was submitted the same to the Human Resources Department and the office of the Chief Judge.

318.    That shortly thereafter, a Request for Investigation was issued by the Judicial Tenure Commission and served on the Plaintiff.

319.    That the Plaintiff first contacted Defendant, Collins, Einhorn, Farrell, P.C. to represent her interests relative to the Request for Investigation that was filed by the Michigan Judicial Tenure Commission.

320.    That throughout the time of the responding process said attorneys met with the Plaintiff various times about various issues that were the subject of the Plaintiff's Request for Investigation launched by the Judicial Tenure Commission.

321.    That said Defendant attorneys, Collins, Einhorn Farrell, P.C. (hereinafter referred to as CEF) requested and then received various and voluminous information from the Plaintiff regarding the Request for Investigation.

322.    That in particular, the Defendant, CEF, requested medical records, discs, CD's from the Plaintiff in answer to inquiries from the JTC.

323.    That the Plaintiff immediately provided said records, discs, and CD's to CEF upon request.

324.    That the action by the JTC was an employer-employee related request and was governed by the Americans with Disability Act of 1990.

325.    That in particular, the Plaintiff released medical records relating to the medical condition involving her knees.  Said records were released to the Defendant attorneys in late December of 2013.   That the records included films from MRI examinations and x-ray examinations conducted by Plaintiff's personal physicians.

326.    That the JTC requested that the Plaintiff attend and submit to an IME examination conducted by a Dr. Mendelssohn

327.    That as the JTC investigation proceeded, the Defendants also requested that the Plaintiff submit to a psychiatric examination which was requested by the JTC on several occasions and the first request by the Defendants took place on or about

328.    That the Plaintiff demanded on several occasions to be advised of the legal basis of such a request and in addition, the Plaintiff requested case law, statutory references or other legal references or indicia as support for submitting for such an examination.

329.    That the Plaintiff was instead deluged with further requests by the Defendants to submit to a psychiatric evaluation.

330.    That furthermore the Plaintiff was not advised that she had the right as an employee to refuse such an examination and that submitting to said examination was to be done only on a voluntary basis pursuant to federal law.

331.    That the federal law, the American's with Disability Act, was primarily applicable to the employer-employee scenario in which the employee found herself.

332.    That the Defendants continued to demand that the Plaintiff submit to medical examinations on several occasions in order to achieve compliance with the employer's request.

333.    That the defendants failed to advise the Plaintiff that she had a right to refuse a medical examination requests by her employer.

334.    That the Defendants failed to advise the Plaintiff and the JTC that any and all medical information obtained in connection with the Plaintiff's medical condition was to remain confidential and not be disclosed to any third parties or the public without her absolute permission.

335.    That the Defendants failed to request that the psychiatric examination of Dr. Norman Miller, which was conducted ex-parte without the Plaintiff's consent, be suppressed and that the same should remain confidential and not be disclosed to the public pursuant to the Americans with Disability Act enacted as federal law.

336.    That the Defendants failed to seek a suppression of said medical information but sought to demand that the Plaintiff submit to additional rescheduled examinations of doctors' evaluations.

337.    That as a result the Plaintiff suffered irreparable harm to her reputation, emotional distress, anger, outrage,

338.    That the illegal and unwarranted disclosure of said medical information was proscribed by the Americans with Disability Act and the Defendants should have apprised the Plaintiff of the same.

339.    That on or about May 12, 2016, the Plaintiff was conducting research to support her position that she had been discriminated against pursuant to the American's With Disability Act of 1991 when she discovered that pursuant to that law, she was not required to submit to a medical examination if requested by her employer.

340.    That Plaintiff further discovered that pursuant to the American's With Disability Act of 1990, said employer is prohibited from disclosing the results of said medical examination to the public.

341.   Plaintiff further discovered that the referenced federal law prohibits mandatory compliance by the employee and further provides that the employee may comply with a request for a medical examination on a voluntary basis only.

Intentional Breach of Contract

342.   That the Plaintiff hereby incorporates Paragraphs 314 through 341 as though fully set forth in the Complaint outlined herein.

343.   That the Plaintiff was apprised on May 12, 2016 that the Defendants had committed malpractice by not advising her of her right to voluntarily submit to the medical examinations requested by the Defendant, Judicial Tenure Commission.

344.   That the Defendants knew or should have known that the Plaintiff had a right to refuse any and all requests for medical examinations and failed to file the appropriate legal motions to suppress and prevent publication of any and all results of medical examinations such as with Dr. Norman Miller.

345.   That instead, the Defendants' efforts were concentrated on persuading the Plaintiff to submit to the medical examinations which they knew would be disclosed to the public.

346.   That the Defendants held themselves out as attorneys with the background, expertise, and experience to defend the Plaintiff against the charges of judicial misconduct which primarily focused on the Plaintiff's refusal to submit to medical examinations.

347.   That the Defendants represented other judges on a regular basis and should have known the ramifications and requirements of the American with Disability Act 0f 1990.

348.   That the Defendants knew or should have known that the American's With Disability Act was applicable to the Plaintiff's employment situation and failed to file the applicable motions to stall and eliminate the publication and dissemination of the medical information compiled by Dr. Norman Miller and Dr.

349.   That the Defendants breached their contract with the Plaintiff to represent her interests diligently and in accord with applicable state, local and federal mandates.

350.   That the Defendants displayed a conflict of interests by assisting the Michigan Judicial Tenure Commission in acquiring medical information that was strictly confidential and failed to advise the Commission that Plaintiff would only provide such information on a voluntary basis.

Defamation

Attorney Cyril Hall and Laidler & Zielinski, PLLC

351.    That the Plaintiff hereby incorporates Paragraphs 342 through 350 as though fully set forth herein word for word and further states that:

352.    That the Defendants Cyril Hall and Laidler and Zielinski, PLLC intentionally violated attorney-client privilege and divulged personal and private strategic discussions about the Plaintiff's retirement options to the public on record to the Judicial Tenure Commission and to the news media outlets in Metropolitan Detroit.

353.    That the Plaintiff did not give the Defendants, Cyril Hall or Laidler and Zielinski, PLLC, permission to divulge such discussions to the public.

354.    That the Defendants, Cyril Hall and Laidler and Zielinski, PLLC, made false statements to the news media that the Plaintiff never said at all.

355.    That the Defendants, Cyril Hall and Laidler and Zielinski, PLLC, made disparaging and damaging statements to the Court and to the news media about the Plaintiff's mental condition.

356.    That the Defendants, Cyril Hall and Laidler and Zielinski, PLLC, falsely communicated to the public that the Plaintiff was "amendable to treatment" when the Plaintiff had made no such statements to the Defendants.

357.    That the Defendants, Cyril Hall and Laidler and Zielinski, PLLC, knew that the statements were false when they were communicated to the Court and to the news media.

358.    That the Defendants negligently published false statements to the Judicial Tenure Commission and to the news media at large in the Detroit Metropolitan area about the Plaintiff.

359.    That either actionability of the statement irrespective of special harm or the existence of special harm was caused by the publication

360.    That the Plaintiff suffered actual damages as a result of the defamatory statements including the loss of her employment.

361.    That the Plaintiff suffered emotional distress, mental anguish, emotional upset, stress, embarrassment, humiliation, anger, as a result of the defamatory statements made by the Defendants.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant an award of compensatory damages and punitive damages, if applicable, and enter a judgment with costs and reasonable attorneys' fees incurred because of this lawsuit with interest thereon; and other damages and further relief as deemed just in favor of the Plaintiff.

Respectfully Submitted,

BY: _____

Brenda K. Sanders
In Pro Per
P. O. Box 885
3517 U.S. Highway 278
Barnwell, South Carolina  29812
(803) 571-6970
brendaksanders@outlook.com

Dated;  August 9, 2016

33

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BRENDA K. SANDERS,

        Plaintiff,

vs.

MICHIGAN SUPREME COURT, MICHIGAN JUDICIAL TENURE
COMMISSION, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
U.S. ATTORNEY'S OFFICE, DR. NORMAN L. MILLER, UNITED STATES
GOVERNMENT, MICHIGAN ATTORNEY GRIEVANCE COMMISSION,
MICHIGAN ATTORNEY DISCIPLINE BOARD, CITY OF DETROIT, a municipal
corporation, LAIDLER & ZIELINSKI, PLLC,  CYRIL HALL, COLLINS,
EINHORN, FARRELL, PC.,

        Defendants.

_____/

## **JURY DEMAND**

The Plaintiff requests trial by jury.

Respectfully Submitted,

BY: _____
Brenda K. Sanders
In Pro Per
P. O. Box 885
3517 U.S. Highway 278
Barnwell, South Carolina  29812
(803) 571-6970
brendaksanders@outlook.com

Dated:  August 9, 2016

34

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BRENDA K. SANDERS,

        Plaintiff,

vs.

MICHIGAN SUPREME COURT, MICHIGAN JUDICIAL TENURE
COMMISSION, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
U.S. ATTORNEY'S OFFICE, DR. NORMAN L. MILLER, UNITED STATES
GOVERNMENT, MICHIGAN ATTORNEY GRIEVANCE COMMISSION,
MICHIGAN ATTORNEY DISCIPLINE BOARD, CITY OF DETROIT, a municipal
Corporation, LAIDLER & ZIELINSKI, PLLC, CYRIL HALL, COLLINS, EINHORN,
FARRELL, PC.,

        Defendants.

_____ /

## PETITION FOR INJUNCTIVE RELIEF

NOW COMES the Plaintiff, Brenda K. Sanders, in Pro Per, and in support of her Petition for Injunctive Relief pursuant to Rule 65 states as follows:

1.    That the Defendants, Michigan Judicial Tenure Commission and the Michigan Supreme Court have used the undocumented and unsupported medical opinion of Dr. Norman Miller to support the suspension of Plaintiff's law license.

2,    That the Defendants have communicated the medical opinion of Dr. Norman Miller to third parties in the State of South Carolina which involve the adjudication of a criminal matter wherein she represented her brother in 2001 to essentially defeat a successive appeal.

3,    That the Plaintiff has been involved in her brother's case for almost twenty years.

4.    That copies of Dr. Norman Miller's opinion were sent to attorneys whom the Plaintiff retained to represent her brother in the criminal proceedings.

5.    That copies of Dr. Norman Miller's medical findings were sent to the prison where the Plaintiff's brother is housed in attempt to embarrass and humiliate the Plaintiff.

6.     That the Defendants have interfered with what was going to be a successful appellate review of her brother's criminal convictions.

7.     That the Defendants communicated the medical findings of Dr. Norman Miller to the Wayne County Gun Board which caused the suspension of the Plaintiff's CPL permit.

8.     That Dr. Norman Miller has never examined the Plaintiff and simply rendered a medical finding that the Plaintiff was "psychotically delusional" when she wrote a letter to the U.S. Attorney's Office which implicated the Michigan Supreme Court and the Michigan Judicial Tenure Commission.

9.     That Dr. Norman Miller has not and did not follow established protocol when he rendered a medical finding without examining the Plaintiff and since that time, Dr. Miller has never interviewed the Plaintiff or even met the Plaintiff.

10.     That the medical opinion rendered by Dr. Norman Miller was retaliatory in nature and done to punish the Plaintiff for reporting the suspicious deaths of two judges to the U.S. Attorney's Office.

11.     That the Plaintiff had been "tipped off" regarding one of the deaths.

13.     That the Plaintiff has previously volunteered to polygraph in response to unsupported and unwarranted allegations that have been waged against her and the Defendants agreed to accept the results of said polygraph examination and allow the same to influence whether or not charges of dishonesty were brought in a formal complaint against the Plaintiff.

14.     That the polygraph examination submitted to by the Plaintiff yielded the results that the Plaintiff was 'CONCLUSIVELY TELLING THE TRUTH" and charges were dismissed by the Judicial Tenure Commission against the Plaintiff in 2009.

15.     That the Plaintiff offered to polygraph about her allegations reported to the U.S. Attorney's Office and the Plaintiff's offer to polygraph was refused by the Defendants.

16.     That instead, the Defendants, JTC and the Michigan Supreme Court retained the services of Dr. Norman Miller to opine that I was "psychotic delusional".

17.     That a true report of crime to the U.S. Attorney's Office should not be the basis of a medical opinion that the Plaintiff was psychotic and delusional.

18.     That the Plaintiff is still offering to submit to a polygraph examination to prove the allegations of the letter that was submitted to the U.S. Attorney's Office and if the polygraph is determined that the Plaintiff is truthful, the medical opinion of Dr. Miller should not be used any further to defame the Plaintiff.

19.     That the Plaintiff is seeking to enjoin the Defendants from publishing the highly irregular and false medical opinion of Dr. Miller to third parties until the conclusion of this litigation and until the veracity of the Plaintiff is determined by this Honorable Court.

20.     That there is a strong likelihood of substantial and immediate irreparable injury to the Plaintiff's reputation in the interim.

21.     That there are no adequate remedies of law that could adequately compensate the Plaintiff for the falsehoods and the false medical opinion of Dr. Norman Miller that was rendered ex-parte and without ever meeting or examining the Plaintiff.

22.     That the Plaintiff avers that the evidence supports the probability of success on the merits.

WHEREFORE, the Plaintiff respectfully request that this Honorable Court issue an injunction restraining the Defendants from issuing any statements, opinions, etc. which would further disparage the Plaintiff by publishing that she is "psychologically delusional" and unfit to be employed or hold public elected office.

Respectfully Submitted,

BY: _____

Brenda K. Sanders
In Pro Per
P. O. Box 885
3517 U.S. Highway 278
Barnwell, South Carolina  29812
(803) 571-6970
brendaksanders@outlook.com

Dated;  August 9, 2016

37

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Brenda K. Sanders<br>P.O. Box 885<br>Barnwell, SC 29812 | From: Detroit Field Office<br>477 Michigan Avenue<br>Room 865<br>Detroit, MI 48226 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 471-2015-02539 | **Marlea J. Applegate,** Investigator | **(313) 226-2367** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Webster N. Smith,** **District Director**

5/13/2016
*(Date Mailed)*

Enclosures(s)

cc: **Paul J. Fischer**
**Executive Director and General Counsel**
**Judicial Tenure Commission**
**3034 West Grand Blvd Suite 8-450**
**Detroit, MI 48202**

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

> ➢ The limitations from the impairment **no longer have to be severe or significant** for the impairment to be considered substantially limiting.
> ➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
> ➢ **Only one major life activity** need be substantially limited.
> ➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
> ➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
> ➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

> ➢ An individual can meet the definition of disability if **an employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
> ➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
> ➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
> ➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

ERIC SANDERS
(803) 571-6870
THE UPS STORE #2650
202 EASTSIDE DR
AIKEN SC 29803

SHIP EASTERN DISTRICT OF MICHIGAN
TO: US DISTRICT COURT
    OFFICE OF THE CLERK
    5TH FL
    231 W LAFAYETTE AVE
    DETROIT MI 48226

2 LBS          1 OF 1
SHP WT: 2 LBS
DATE: 10 AUG 2016

MI 483 0-03

UPS GROUND
TRACKING #: 1Z 115 570 03 2908 4698

BILLING: P/P

REF #1: CP

RECEIVED
AUG 1 2 2016
CLERK'S OFFICE
DETROIT

Brenda K. Sanders
P. O. Box 885
3517 U.S. Highway 278
Barnwell, South Carolina 29812
(803) 571-6970
brendaksanders@outlook.com

August 9, 2016

U.S. District Court
 Eastern District of Michigan
Office 0f the Clerk
Fifth Floor
231 W. Lafayette Avenue
Detroit, Michigan  48226

RE      Brenda K. Sanders v. Judicial Tenure Commission, et. al.

Dear Sir/Madam

Enclosed please find for filing;
- Two copies of a signed Complaint;
- Two copies of a signed Civil Cover Sheet;
- One copy of signed Application to Proceed Without Prepaying Fees or Costs;
- One copy of signed Pro Se Filer Application for Electronic Filing;

Please be advised that I am seeking approval of my Pro Se Filer Application prior to my requests for executed summonses.  I wish to designate the judge and case number on the pleadings before formally serving the Defendants.  Pursuant to Federal Rule of Civil Procedure 2.105, I plan to accomplish service on the named Defendants.  I will also file a 'Return of Service of Summons relative to each Defendant.

Additionally, because the U.S. Government is named as a Defendant, I will also serve summonses on the U.S. Attorney General in Washington, D.C., the U.S. Attorney's for the Eastern District and the heads of each respective federal agency.

If you have any further questions regarding the enclosed documents, please do not hesitate to contact me via the information provided.  Thank you for your anticipated cooperation in this regard.

Very truly yours,

Brenda K. Sanders

BKS;bs
Enclosures

Case:2:16-cv-12959
Judge: Cohn, Avern
MJ: Whalen, R. Steven
Filed: 08-15-2016 At 10:18 AM
CMP BRENDA K. SANDERS V MICHIGAN SUPREME COURT, ET AL (LG)

JS 44 (Rev. 07/16)

# CIVIL COVER

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Brenda K. Sanders

## DEFENDANTS
Judicial Tenure Commission, et., al.,

**(b)** County of Residence of First Listed Plaintiff  **Barnwell County, SC**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **Wayne County, MI**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
§ 35.130 and § 35.134 (a)-(b) of Title II of the ADA, 42 U.S.C. §§ 12101-12213, and 42 U.S.C. §§ 2000e-2000e17

Brief description of cause:
Pl. alleging she was subjected to discrimination, retaliation, and hostile work environment based on race/disability.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 100.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE

DOCKET NUMBER

DATE
08/07/2016

SIGNATURE OF ATTORNEY OF RECORD
*(In Pro Per)*

FOR OFFICE USE ONLY

# New Lawsuit Check List

**Instructions:** Put a check mark in the box next to each appropriate entry to be sure you have all the required documents.

☑ Two (2) completed **Civil Cover Sheets**. *Back page Missing*

☑ Enter the number of defendants named in your lawsuit in the blank below, add 2 and then enter the total in the blank.

$\underline{11}$ + 2 = $\underline{13}$ **Complaints.**
# of Defendants        Total

*22 copies of Cmp*

Received by Clerk: _____ Addresses are complete: _____

Case: 2:16-cv-12959
Judge: Cohn, Avern
MJ: Whalen, R. Steven
Filed: 08-15-2016 At 10:18 AM
CMP BRENDA K. SANDERS V MICHIGAN SU
PREME COURT, ET AL (LG)

☐ If any of your defendants are **government agencies**:
Provide two (2) extra copies of the **complaint** for the U.S. Attorney and the Attorney General.

| **If Paying The Filing Fee:** | **If Asking That The Filing Fee Be Waived:** |
|---|---|
| ☐ Current new civil action filing fee is attached.<br><br>Fees may be paid by check or money order made out to:<br><br>***Clerk, U.S. District Court***<br><br>Received by Clerk: _____ Receipt #: _____ | ☑ Two (2) completed **Application to Proceed in District Court without Prepaying Fees or Costs** forms.<br><br><br>Received by Clerk: _____ |

## Select the Method of Service you will employ to notify your defendants:

| Service via Summons by Self | Service by U.S. Marshal<br>(Only available if fee is waived) | Service via Waiver of Summons<br>(U.S. Government cannot be a defendant) |
|---|---|---|
| ☐ Two (2) completed **summonses** for each defendant including each defendant's name and address.<br><br><br><br>Received by Clerk: _____ | ☐ Two (2) completed **USM – 285 Forms** per defendant, if you are requesting the U.S. Marshal conduct service of your complaint.<br><br>☐ Two (2) completed **Request for Service by U.S. Marshal** form.<br><br>Received by Clerk: _____ | ☐ You need not submit any forms regarding the Waiver of Summons to the Clerk.<br><br>Once your case has been filed, or the Application to Proceed without Prepaying Fees and Costs has been granted, you will need:<br>• One (1) **Notice of a Lawsuit and Request to Waive Service of a Summons** form per defendant.<br>• Two (2) **Waiver of the Service of Summons** forms per defendant.<br><br>Send these forms along with your filed complaint and a self-addressed stamped envelope to each of your defendants. |

**Clerk's Office Use Only**

Note any deficiencies here:

*No Page Back to Cover sheet. No Dfts Copies of Cmp. No Service documents.*

Rev. 4/13