UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA K. SANDERS,

        Plaintiff,                  Case No.  16-12959

v.                              District Judge Avern Cohn
                                       Magistrate Judge R. Steven Whalen

MICHIGAN SUPREME COURT, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

On August 15, 2016, Plaintiff Brenda K. Sanders filed a *pro se* action in this

Court, alleging violations of state and federal law pertaining to her removal from state

judicial office, including employment-related claims under Title VII and the Americans

with Disabilities Act relative to her tenure as a state district court judge.  Before the Court

are the following dispositive motions, which have been referred for Reports and

Recommendations under 28 U.S.C. § 636(b)(1)(B):

    -Defendant Norman Miller's Motion to Dismiss [Doc. #80]

    -Defendant Collins Einhorn Farrell, PC's Motion to Dismiss [Doc. #81]

    -Defendants Michigan Supreme Court, Judicial Tenure Commission, and
     Attorney Discipline Board's Motion to Dismiss [Doc. #82]

    -Defendant 36th District Court's Motion to Dismiss [Doc. #112]

    -Defendant City of Detroit's Motion for Judgment on the Pleadings [Doc. #123]

    For the reasons discussed below, I recommend that all five motions be

GRANTED, and that these Defendants be DISMISSED WITH PREJUDICE.  I also recommend that Defendant Attorney Grievance Commission be *sua sponte* dismissed under Fed.R.Civ.P. 12(b)(1).

## I.    FACTS

Plaintiff Brenda K. Sanders was a judge of the 36th District Court for the City of Detroit.  The Michigan Judicial Tenure Commission ("JTC") recommended that she be removed as a state court District Judge.  On July 1, 2015, the Michigan Supreme Court, on *de novo* review, accepted in part the JTC's recommendation, and ordered Ms. Sanders removed from office, stating the it "accept[s] the determination that the Respondent suffers from a mental disability that prevents the performance of her judicial duties."  *In re Honorable Brenda K. Sanders Judge, 36th District Court*, 498 Mich. 856, 865 N.W.2d 30 (2015).  The Court described as follows the background of Ms. Sanders' conduct in 2013, as well as the conclusions of Dr. Norman Miller, a board certified psychiatrist:

> "In December 2013, Respondent sent a letter to U.S. Attorney Barbara McQuade, requesting an investigation into certain events that occurred at the 36th District Court. She alleged that two judges had died under mysterious circumstances and that a newspaper tried to name her as a suspect in the deaths, that the Republican Party and this Court were involved in having her evicted from her residence, that this Court and the Judicial Tenure Commission had been engaged in a constant attempt to slander and defame her name, that she had been 'medically harmed' because her doctors had been influenced by her employer, and that her 'e-mail accounts, bank accounts, cell phones, etc. have been hacked and are currently being tracked.' Respondent also noted that she feared for her safety, that she possessed a concealed weapon permit, and that she legally carried a weapon. Additionally, Respondent failed to cooperate in the scheduling of an independent psychiatric examination, including disobeying an order of this Court that she undergo such an examination. A board

certified psychiatrist concluded that, due to her delusions, Respondent could not interpret reality correctly and could not make rational decisions. The psychiatrist opined that Respondent's 'insight and judgment are too impaired because of her delusions, to render opinions not only in court but elsewhere, but particularly in court as a judge.'" 865 N.W.2d at 30-31.

The Supreme Court then adopted the following conclusion of the JTC:

"'The Commission concludes that the Examiner has established by a preponderance of the evidence that Respondent suffers from a mental disability that prevents the performance of her judicial duties, as set forth in Count I of the Amended Formal Complaint. Mich Const 1963, art VI, § 30; MCR 9.205(B). This conclusion is supported by Dr. Norman Miller's opinion that Respondent suffers from a psychotic disorder that affects her ability to interpret reality and make rational judgments.'" *Id*. at 31.

Separate from the issue of mental disability, the Supreme Court also adopted the findings of the JTC regarding allegations of Ms. Sanders' misconduct in office and in proceedings before the JTC:

"In September 2013 Respondent falsely told her employer that she required a long-term medical leave of absence due to imminent knee surgeries. Although the medical leave was granted, the surgeries were never performed. Respondent made numerous intentional misrepresentations to the Judicial Tenure Commission regarding her medical condition and efforts to treat it, including efforts to schedule an independent medical examination. She also made false statements to the Commission regarding the scheduling of an independent psychiatric examination. Respondent also made false statements in pleadings filed in federal court and in the 36th District Court." *Id*. at 31.

The Court then adopted as its own the following conclusions of the JTC:

"[T]he Commission concludes that the Examiner has established by a preponderance of the evidence a factual basis for the allegations set forth in Counts III and IV of the Amended Formal Complaint. A preponderance of the evidence at the formal hearing showed that Respondent failed to cooperate with the Commission in its investigation, and that Respondent made intentional misrepresentations to the Commission, to her employer,

and to courts in which she was involved in litigation." *Id*.

In her amended complaint [Doc. #14], Ms. Sanders brings the following claims, relative to the Defendants who have filed the present motions:

Count I: Americans with Disabilities Act, against Defendants JTC, 36th District Court, and Michigan Supreme Court;

Count II: Hostile Work Environment, against Defendants 36th District Court, Michigan Supreme Court, and JTC;

Count III: Title VII, Race, Gender, and Religion Discrimination, against Defendants Michigan Supreme Court, 36th District Court, and JTC;

Count V: Abuse of Process, against Defendants Michigan Supreme Court and JTC;

Count VI: Fair Debt Collection Practice Act, against Defendant JTC;

Count VII: Michigan's Whistleblower Protection Act, against Defendants 36th District Court, JTC, and Michigan Supreme Court;

Count VIII: Fraudulent Misrepresentation, against Defendants City of Detroit and Michigan Supreme Court;

Count IX: Negligence, against Defendants AGC and Attorney Discipline Board ("ADB");

Count X: Libel and Defamation, against Defendants JTC, Michigan Supreme Court, ADB, Michigan Attorney Grievance Commission ("AGC"), and Dr. Norman Miller;

Count XI: Tortious Interference with Business Relationship, against Defendants JTC, Michigan Supreme Court, 36th District Court, AGC, and ADP;

Count XIII: Legal Malpractice, against Defendant Collins Einhorn Ferrel, PC.

Facts specific to each Defendant and each Count of the amended complaint will be addressed as necessary in the Discussion section of this Report and Recommendation.

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on

its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]'–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) of the Federal Rules of Civil Procedure is subject to the same standards of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998).

## III.   DISCUSSION

### A.   Dr. Norman Miller [Doc. #80]

Dr. Miller, a psychiatrist, provided a report for the JTC regarding Ms. Sanders' mental state. Although Ms. Sanders disobeyed the Supreme Court's order that she

undergo an independent psychiatric evaluation, Dr. Miller opined that her "insight and

judgment are too impaired because of her delusions, to render opinions not only in court

but elsewhere, but particularly in court as a judge." *In re Sanders*, 865 N.W.2d at 31.

Ms. Sander's brings a single claim of Libel and Defamation against Dr. Miller,

alleging that he and other Defendants "spoke or otherwise communicated" false

statements of fact with "reckless disregard for the truth." *Amended Complaint* [Doc. #14],

¶¶ 327-329.  While she alleges that Defendants JTC, Michigan Supreme Court, and 36th

District Court made written, defamatory publications to third parties, *id.*, ¶ 331, she

makes no such claim against Dr. Miller.[1]  Rather, her claim against him is based on his

evaluation and actions as the psychiatric expert for the JTC.  However, precisely because

he provided his report in his role as the JTC's expert, he is protected by absolute

---

[1] In her response to this motion [Doc. #120], Ms. Sanders alleges for the first time that "one could make a reasonable inference that Dr. Norman Miller libeled and defamed the Plaintiff when he made statements prior to his judicial testimony in 2014 to third parties...." Pg. ID 1566.  She also alleges for the first time, and in the passive voice, that "Dr. Miller's statements were also furnished to third parties in the State of South Carolina in early 2015." *Id*.  Apart from the fact that these new allegations do not state a claim of defamation with the required specificity, *see Royal Palace Homes, Inc. v. Channel 7 of Detroit*, 197 Mich.App. 48, 52 (1992), a "plaintiff[] may not amend [her] complaint through a response brief." *Jocham v. Tuscola Cnty.*, 239 F.Supp.2d 714, 732 (E.D. Mich. 2003).  *See also Montesi v. Nationwide Mut. Ins. Co.*, 970 F.Supp.2d 784, 792 (W.D.Tenn.2013) ("Additionally, the complaint is devoid of any factual allegations to support this new assertion, and moreover, new dates or facts in [plaintiff's] response cannot remedy a pleading deficiency."); *Edkins v. United States*, 2015 WL 871587, at *7 (E.D. Mich. 2015)("Plaintiff may not attempt to cure his deficient pleading by alleging additional facts—which are still vague and conclusory—in a sur-reply to a motion to dismiss.").

immunity.  M.C.R. 9.125 provides:

> "A medical or psychological expert who administers testing or provides a report pursuant to MCR 9.114(C) or MCR 9.121 is absolutely immune from suit for statements and communications transmitted solely to the administrator, the commission, or the commission staff, or given in an investigation or formal disciplinary proceeding."

*See also Lepley v. Dresser*, 681 F.Supp. 418, 423 (W.D. Mich. 1988)(citing *Briscoe v. LaHue*, 460 U.S. 325)(1983))("[W]itnesses who testify before both the Attorney Grievance Commission and the Judicial Tenure Commission are entitled to absolute immunity for statements given in the course of the proceedings.").

In addition, the complaint against Dr. Miller is time-barred.  In Michigan, "[t]he period of limitations is 1 year for an action charging libel or slander."  MCL § 600.5805(9).  This one-year statute of limitations also applies to claims for defamation. *Mitan v. Campell*, 474 Mich. 21, 23, 706 N.W.2d 420 (2005); *Massey v. Int'l United Auto., Aerospace & Agric. Implement Workers of Amer.*, 462 F.Supp.2d 780, 785 (E.D. Mich. 2006).  The Michigan Supreme Court decision adopting the recommendation of the JTC to remove Ms. Sanders from office, based in part on Dr. Miller's report, was issued on July 1, 2015.  It necessarily follows that Dr. Miller provided his report to the JTC before that date. Thus, the statute of limitations would have run earlier than, and certainly no later than July 1, 2016.  Yet Ms. Sanders did not file her initial complaint in this Court until August 15, 2016, and her amended complaint on March 9, 2017, both dates being beyond the one-year statute of limitations.

In a sur-reply [Doc. #152], Ms. Sanders argues that the statute of limitations for

her libel and defamation claim is three years, based on her theory that "42 U.S.C. § 1983 claims are governed by the statute of limitations that apply to personal injury tort claims in the stat in which such claim arises." *Sur-reply*, at 19, Pg. ID 2008. First, she has improperly raised this argument for the first time this sur-reply. *See* fn. 1, above. But more to the point, her libel and defamation claim against Dr. Miller is based on state, not federal law. To state a claim under § 1983, a plaintiff must allege the deprivation of a right secured by the federal constitution or laws. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978). Therefore, § 1983 does not apply to her defamation and libel claim.

Dr. Miller's motion to dismiss [Doc. #80] should be granted.

### B.    Collins Einhorn Farrell, P.C. [Doc. #81]

Ms. Sanders brings a state law claim of legal malpractice against Defendant Collins Einhorn Farrell, P.C. ("CEF"), who seeks dismissal based on the statute of limitations.

Under M.C.L. § 600.5805(6), the statute of limitations for a legal malpractice claim is two years. "[T]he period of limitations runs from the time the claim accrues." M.C.L. § 600.5827. A legal malpractice claim "accrues at the time [the attorney] discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." M.C.L. § 600.5838(1). Finally, under M.C.L. § 5838(2), a claim for legal malpractice may be brought either two years from the date the claim accrues (pursuant to § 5805(6)), *or* "within 6 months after

the plaintiff discovers or should have discovered the existence of the claim, whichever is later." M.C.L. § 5838(2) goes on to state:

> "The plaintiff has the burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim. A malpractice action that is not commenced within the time prescribed by this subsection is barred."

Ms. Sanders hired CEF to represent her in proceedings before the JTC. *Amended Complaint*, ¶¶ 370-371. She states that she contacted attorney Cyril Hall and Laidler & Zielinski, PLLC "sometime in mid to late September, 2014," requesting that they substitute as counsel of record in place of CEF. These attorneys then filed an appearance with the JTC. *Id*. ¶¶ 398-399. Although Ms. Sanders does not indicate in her amended complaint the date that new counsel file an appearance with the JTC, in her response to this motion [Doc. #119], she "surmises that the Defendant, Collins Einhorn, ceased representing her interests in connection with the JTC Request for Investigation sometime in October, 2014." *Response* [Doc. #119] at 15, Pg. ID 1540. Under M.C.L. § 600.5838(1), the date of accrual of her malpractice claim is when CEF "discontinued serving the Plaintiff" in mid- to late September 2014 or "sometime in October" of 2014. At the latest, then, the statute of limitations expired two years later, in September or October of 2016.[2]

---

[2] The alternative 6-month rule of M.C.L. § 5838(2) is inapplicable, since Plaintiff "should have discovered" the basis for her claim no later than the Michigan Supreme Court's July 1, 2015 opinion. The expiration of the six month period would have been January 1, 2016, prior to the expiration of the two year statute of limitations. The two

Defendant CEF acknowledges that Ms. Sanders filed her initial complaint within the statute of limitations, on August 15, 2016. However, citing *Blaha v. A.H. Robins & Co.*, 708 F.2d 238 (6th Cir. 1983), CEF argues that the statute continued to run untolled until it was served with the complaint, and that service occurred will beyond the two-year period.

In *Blaha*, the Sixth Circuit restated the principle that "[w]hen the act of service is an integral part of a state statute of limitations, a federal court must likewise require service before the statute is tolled." *Id*. at 239 (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980)). The Court then held that a Michigan Court Rule[3] providing that a suit will be automatically dismissed if service is not made within 180 days after the complaint is filed "is an integral part of Michigan's law with respect to statutes of limitations." *Id*. Affirming the dismissal of the case on statute of limitations grounds, the Sixth Circuit stated:

> "Failure to apply Rule 102 in this diversity action would create an inequitable situation where the federal diversity plaintiff is able to pursue her case while a state plaintiff, under identical facts, would be barred by the statute of limitations. '[T]here is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.'" *Id*. at 239-240 (quoting *Walker*, 446 U.S. at 753).

---

year limitations period therefore controls.

[3] The Court Rule at the time, General Court Rule 102, has been replaced by M.C.R. 2.102, which sets a 91-day period for service.

*Blaha* was a diversity action, whereas the state law malpractice claim against CEF

appears to be based on the Court's supplemental jurisdiction.  However, the same

principles apply.  *See Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733,

741 (6th Cir. 1999)("A federal court exercising supplemental jurisdiction over state law

claims is bound to apply the law of the forum state to the same extent as if it were

exercising its diversity jurisdiction.").  *See also Bryant v. Tolbert*, 2001 WL 1218896, *3

(2001)(dismissing both a § 1983 claim and a supplemental state law claim on statute of

limitations grounds, citing *Blaha*).

The current Michigan Court Rule, M.C.R. 2.102(D), provides that service of the

summons and complaint must be made within 91 days after filing. Failure to serve within

91 days results in automatic dismissal without prejudice.  M.C.R. 2.102(E)(1); *see also*

*Durfey v. Kellogg*, 193 Mich.App. 141, 144-45, 483 N.W.2d 664 (1992).[4]  In addition,

Michigan's tolling statute, M.C.L. § 600.5856, provides that the statutes of limitations are

tolled "[a]t the time the complaint is filed, *if a copy of the summons and complaint are*

*served on the defendant within the time set forth in the supreme court rules.*" (Emphasis

added). Thus, "[b]y operation of M.C.R. 2.102(E) and M.C.L. § 600.5856 (2004), no

tolling of the limitations period occurs until a claim is both filed and served."  *Hutchinson*

*v. Smith*, 2007 WL 3038006, *3 (E.D. Mich. 2007).

---

[4] M.C.R. 2.102(D) also provides that the judge may order a second summons to issue on a showing of due diligence *made within the 91-day period*.  Ms. Sanders did not request that a second summons issue within that 91-day period.

The following time line is pertinent:

Late October, 2014–the latest date the malpractice claim accrued based on retention of new counsel.

July 1, 2015–Michigan Supreme Court decision.

August 15, 2016–Complaint filed [Doc. #1].

September 13, 2016–Motion to proceed IFP denied [Doc. #6].

November 7, 2016–Complaint dismissed without prejudice for failure to pay filing fee [Doc. #7].

January 11, 2017–Complaint reinstated, IFP status granted [Doc. #10].

March 9, 2017–Amended complaint filed [Doc. #14].

March 16, 2017–Order for Plaintiff to provide Defendant's correct address for Marshal's service [Doc. #17].

March 17, 2017–Summons returned unexecuted [Doc. #28].

May 11, 2017–Summons re-issued for Defendant CEF [Doc. #36].

June 4, 2017–Plaintiff's request for Clerk's entry of default [Doc. #64].

June 6, 2017–Notice of denial of entry of default, stating, "No document has been filed showing Defendants have been served." [Doc. #69].

June 7, 2017–Appearance of counsel for Defendant CEF [Doc. #75].

Again, the two-year statute of limitations expired, at the latest, in October of 2016. Ms. Sanders filed her complaint on July 15, 2016.  Under  M.C.R. 2.102(D) and (E), in conjunction with M.C.L. § 600.5856, because the complaint was not served within 91 days (October 24, 2016), the statute of limitations was not tolled.  It was around that very time that the statute of limitations expired.  Yet, Defendant CEF was not served until

after May 11, 2017, when the summons was re-issued.

Accordingly, Ms. Sanders' claim against CEF must be dismissed as time-barred.

### C. Michigan Supreme Court, Judicial Tenure Commission, and Attorney Discipline Board [Doc. #82]

These Defendants are named in the following state law claims:  Count V, Abuse of Process, against Michigan Supreme Court and JTC; Count VII, Michigan's Whistleblower Protection Act, against JTC and Michigan Supreme Court; Count VIII: Fraudulent Misrepresentation, against  Michigan Supreme Court; Count IX: Negligence, against AGC and Attorney Discipline Board; Count X: Libel and Defamation, against JTC, Michigan Supreme Court, ADB, Michigan Attorney Grievance Commission ("AGC").

Ms. Sanders also brings an Americans with Disabilities Act claim against the JTC and Michigan Supreme Court (Count I) and a Fair Debt Collection Practice Act claim against the JTC (Count VI).

Finally, Ms. Sanders asserts two Title VII claims: Count II (hostile work environment against the JTC and the Michigan Supreme Court) and Count III (Race, Gender, and Religion Discrimination, against Michigan Supreme Court and JTC)

### 1. Eleventh Amendment Immunity (Counts I, V, VI, VII, VIII, IX, X, and XI)

Counts I, V, VI, VII, VIII, IX, X, and XI are all barred by Eleventh Amendment immunity.  Under the Eleventh Amendment, the states and their departments and agencies are immune from suit in federal court, regardless of the relief requested, unless the state

has waived immunity or congress has expressly abrogated the immunity by statute.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The state of Michigan has not consented to being sued in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986).

Michigan's constitution vests the judicial power of the state in one court of justice, of which the Michigan Supreme Court is a division. Const. 1963, art. 6, § 1. Therefore, the Supreme Court is an arm of the state of Michigan and is immune from suit under the Eleventh Amendment. *See Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 762-64 (6th Cir. 2010). Likewise, the JTC is established by the state Constitution, Mich. Const. 1963, art 6, § 30, and is therefore entitled to Eleventh Amendment immunity as an arm of the state. *See Thomas v. Bernstein*, 2018 WL 646871, at *2 (E.D. Mich. 2018)("The AGC and its employees are absolutely immune from liability for acts or omissions performed in their official capacities"). The ADB is the "adjudicative arm of the Supreme Court for discharge of its exclusive constitutional responsibility to supervise and discipline Michigan attorneys," M.C.R. 9.110(A), and as such is also immune under the Eleventh Amendment.

As to Ms. Sanders' federal claims under the Americans with Disabilities Act ("ADA") (Count I) and the Fair Debt Collection Practices Act ("FDCPA")(Count VI), Congress has not statutorily abrogated Eleventh Amendment immunity, so those claims must likewise be dismissed. *See Robinson v. Univ. of Akron Sch. of Law*, 307 F.3d 409,

411 (6th Cir. 2002)(citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356,

368 (2001)(states have Eleventh Amendment immunity for ADA claims);[5] *Ha v. Dep't of*

*Education*, 680 F.Supp.2d 45, 47 (D.D.C. 2010)(Congress did not waive sovereign

immunity in enacting the FDCPA).[6]

Finally, as state government entities engaged in the exercise of a governmental

function, the Michigan Supreme Court, JTC, and ADB all have immunity under

Michigan's governmental immunity act, M.C.L. § 691.1407(1). *See Robinson v. City of*

*Detroit*, 462 Mich. 439, 455 613 N.W.2d 307 (2000).

## 2. Title VII Claims (Counts II and III)

### a. Count II

In Count II, Ms. Sanders brings a hostile work environment claim, pursuant to

Title VII, against Defendant JTC and the Michigan Supreme Court.

First, as an elected judge, Ms. Sanders is not a covered "employee" under Title

VII. 42 U.S.C. § 2000e(f) provides:

"The term 'employee' means an individual employed by an employer,

---

[5] Because Ms. Sanders brings her claim in the context of her employment as a judge, she is necessarily invoking Title I of the ADA.

[6] In addition, liability under the FDCPA "can only attach to those who meet the statutory definition of a 'debt collector.' " *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir.2003). That term is defined in 15 U.S.C. § 1692a(6) as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The JTC clearly does not meet that definition.

except that *the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof*, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. (Emphasis added).

In addition, 42 U.S.C. § 2000e-2, by its terms, applies only unlawful employment practices by *employers*. *See Sutherland v. Mich. Dep't of Corrections*, 344 F.3d 603, 611 (2003)("Title VII applies only to 'employers'").        "The determination of whether a particular entity is an employer of a Title VII plaintiff involves an examination of whether the alleged employer exercises control over the manner and means of the plaintiff's work." *Id*. at 612.  The JTC cannot therefore be considered Ms. Sanders' employer.  She was a judge.  The JTC does not regulate any of the conditions of her employment, does not exercise any supervisory power over the day-to-day operation of the 36th District Court or its judges, and does not have the power to hire and fire judges.

The Michigan Supreme Court presents a closer question as to whether it could be considered Ms. Sanders' employer. The Supreme Court does not "hire" 36th District Court judges, and is not involved in the day-to-day functioning of the Court.  However, the Supreme Court does sit at the apex of Michigan's "one court of justice," and does have a supervisory role over lower courts.  It has the authority to discipline and remove lower court judges from office.  But regardless of whether the Supreme Court is considered an employer, as a judge Ms. Sanders in not an "employee" within the meaning of Title VII.

Finally, Ms. Sanders has not stated a plausible hostile work environment claim

against the Michigan Supreme Court. The bulk of her allegations, relating to events that occurred dating back to 2009, are time-barred. Under 42 U.S.C § 2000e-5(e)(1), a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within, at most, "three hundred days after the alleged unlawful employment practice occurred." While not a jurisdictional requirement, this provision operates as a statute of limitation. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Ms. Sanders alleges that she filed her request for investigation with the EEOC on June 29, 2015. *Amended Complaint* [Doc. #14] ¶ 351. Therefore, claims as to any event alleged to have occurred before August 22, 2014 are time-barred.

The only events after that date relate to the suspension of her pay. She alleges that the Supreme Court failed to provide explanations for her pay stubs while she was on vacation, and "failed to enter a court order suspending payment of the plaintiff's salary on or after September 8, 2014." *Id.* ¶¶ 137-138. She states that she did not receive any deposits for her judicial salary September 15, 2014 to July 1, 2015. *Id.* ¶ 139.

In Count III, Ms. Sanders alleges discrimination based on race, gender, and religious affiliation. Although she does not articulate the specific class-based animus of the allegedly hostile work environment in Count II, it is presumably the same. To establish a prima facie case of hostile work environment, she must show (1) she was a member of a protected class; (2) she was subjected to unwelcomed racial, gender, and/or religious harassment; (3) the harassment was based on race, gender, or religion; (4) the harassment had the effect of unreasonably interfering with her work performance by

creating an intimidating, hostile, or offensive work environment; and (5) the existence of

employer liability. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999), citing

*Risinger v. Ohio Bureau of Workers' Compensation*, 883 F.2d 475, 484 (6th Cir.1990).

While suspension of pay is an adverse employment action, it does not fit within

the scope of what is generally considered a hostile work environment, that is, a situation

where "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and

insult that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). In other words, a

specific adverse action does not demonstrate a pattern of harassment.  In addition, Ms.

Sanders has not alleged any facts that would show that the Michigan Supreme Court's

failure to enter an order suspending her pay, or the actual suspension of her pay from

September of 2014 to July of 2015, was based on discriminatory animus.  To meet the

standard of plausibility, a complaint "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal

quotations marks omitted).  The hostile work environment claim in Count II should

therefore be dismissed against the Michigan Supreme Court.

### b.    Count III

In Count III, Ms. Sanders alleges race, gender, and religion discrimination, against

Defendants Michigan Supreme Court and JTC.  As discussed above, Title VII does not

apply to Ms. Sanders because she was an elected judge,  42 U.S.C. § 2000e(f), the JTC

does not have Title VII liability because it is not an employer, and any claims arising out of activity that occurred before August 22, 2014 are time-barred.

Beyond that, Ms. Sanders' claims also fail the *Iqbal* plausibility test. She alleges the suspension of her pay after September of 2014, and vaguely claims that the Supreme Court continues to slander her as being "dishonest." *Amended Complaint*, ¶¶ 203, 205. Again, she makes no non-speculative factual allegations that the Supreme Court acted with discriminatory animus. Nor does she offer any facts indicating that she was treated less favorably that similarly situated judges who were not members of protected classes.

As to Ms. Sanders's claim that she was "subjected to lesbian pornographic images on her phone," *Amended Complaint*, ¶ 208, she does not indicate a specific time that this happened, nor does she offer any facts to show that the Supreme Court participated in or knew about pornography being sent to her phone. She merely states in conclusory language that "one or more defendants were a party to and or passively consented to the sending of pornographic images to the Plaintiff's phone at various times." *Id.* ¶ 211. This falls far short of the plausibility standard of *Iqbal*. Count III should be dismissed as to both the Michigan Supreme Court and the JTC.

### D.    36th District Court [Doc. #112]

For the reasons discussed in Section III(C)(1), above, the 36th District Court is entitled to Eleventh Amendment immunity as to Claims I, V, VI, VII, VIII, IX, X, and XI. *Pucci v. Nineteenth Dist. Court*, 628 F.3d at 762-64.

Likewise, Claims II and III, brought under Title VII, must be dismissed because as

an elected judge, Ms. Sanders is not a covered "employee." 42 U.S.C. § 2000e(f).

Defendant 36th District Court should therefore be dismissed.


### E.    City of Detroit [Doc. #123]

The City of Detroit ("the City") is named as a Defendant only in Count VIII, fraudulent misrepresentation. Ms. Sanders states that the City made "material representations" regarding her pay stubs and electronic wage deposits. *Amended Complaint*, ¶ 310. She alleges that these representations were false, were made recklessly, and were made with the intent that she rely on them. *Id*. ¶¶ 312-314. She says that she suffered both economic and non-economic damages. *Id*. ¶¶ 316-317. However, she does not state what the statements were, who made them, or when or where they were made.

When alleging fraud, a party "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Under Rule 9, plaintiffs must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 563 (6th Cir. 2003). Here, Ms. Sanders' generalized allegations in Claim VIII do not meet the specificity standard of Rule 9(b) or the plausibility standard of *Iqbal*.

In addition, the City, which funds 36th District Court, is protected by Michigan's

Governmental Tort Liability Act ("GTLA"), M.C.L. § 691.1401, *et seq*., which provides

"broad immunity from tort liability to governmental agencies whenever they are engaged

in the exercise or discharge of a governmental function." *Ross v. Consumers Power Co.*

*(on rehearing)*, 420 Mich. 567, 595, 363 N.W.2d 641 (1984), citing M.C.L. § 691.7.

There are six statutory exceptions to governmental immunity, none of which apply to this

case.[7]  Moreover, "a party suing a unit of government must plead in avoidance of

governmental immunity." *Mack v. City of Detroit*, 467 Mich. 186, 203, 649 N.W.2d 47

(2002).  Ms. Sanders has offered no facts that would take her action outside the

governmental immunity.

The City of Detroit should therefore be dismissed.

## F.    The Attorney Grievance Commission

It appears that the Attorney Grievance Commission ("AGC") was not joined in the

motion to dismiss filed by the Michigan Supreme Court, the Judicial Tenure Commission,

and the Attorney Discipline Board.  This may have been an oversight on defense

counsel's part.  Nevertheless, this Court can and should *sua sponte* dismiss the AGC.

"[A] district court may, at any time, *sua sponte*, dismiss a complaint for lack of

subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure when the allegations of a complaint are totally implausible, attenuated,

---

[7] The exceptions are defective public highways, MCL § 691.1402; negligent
vehicle operation, § 1405; public building exception, § 1406; government hospital
exception, § 1407(4); proprietary function exception, § 1413; and negligent sewage
disposal exception, § 1417.

unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v.*

*Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). *See also Higgins v. Lavine*, 415 U.S. 528, 536-

37 (1974) (patently frivolous case divests the district court of jurisdiction). A case is

frivolous if it lacks arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319,

325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

M.C.R. 9.108(a) states:

"The Attorney Grievance Commission is the prosecution arm of the
Supreme Court for discharge of its constitutional responsibility to supervise
and discipline Michigan attorneys and those temporarily admitted to
practice under MCR 8.126 or otherwise subject to the disciplinary authority
of the Supreme Court."

Because the AGC is an arm of the Supreme Court, it is protected by Eleventh

Amendment immunity, and is entitled to dismissal for all the reasons discussed in Section

III)(C), above.

## IV.    CONCLUSION

For all the above reasons, I recommend as follows:

That Defendant Norman Miller's Motion to Dismiss [Doc. #80] be GRANTED;

That Defendant Collins Einhorn Farrell, PC's Motion to Dismiss [Doc. #81] be

GRANTED;

That Defendants Michigan Supreme Court, Judicial Tenure Commission, and

Attorney Discipline Board's Motion to Dismiss [Doc. #82] be GRANTED;

That Defendant 36th District Court's Motion to Dismiss [Doc. #112] be

GRANTED;

That Defendant City of Detroit's Motion for Judgment on the Pleadings [Doc. #123] be GRANTED;

That Defendant Attorney Grievance Commission be DISMISSED *sua sponte* under Fed.R.Civ.P. 12(b)(1) and *Apple v. Glenn*;

That all of the above Defendants be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/ R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE
Dated: February 23, 2018


                        CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing document was sent to parties of record on February 23, 2018, electronically and/or by U.S. mail.

                                        s/Carolyn M. Ciesla
                                        Case Manager to the
                                        Honorable R. Steven Whalen